**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**JOSEPH RANDOLPH MAYS**

**Plaintiff,**

**v.**                                               **CIVIL ACTION NO.: 3:20-CV-199
(GROH)**

**JENNIFER SAAD,
RICHARD HUDGINS,
EDDIE ANDERSON,
MS. ALICIA WILSON,
MS. R. THOMPSON,
JESSICA HOUCHIN,
JON BREMAR,
RICARDO PLAUD,
DR. KIRBY,
NURSE JOSHUA HALL,
MR. McADAMS,
REBECCA GROVE,
HSA MOORE,
MICHAEL WEAVER,
H. WILLIAMS,
ANGELA DUNBAR,
R. CLEM,
OFFICER TANNER,
OFFICER HUDNALL,
IAN CONNORS,
JOHN DOE,
JOHN/JANE DOES,
E. DODRILL, and
JAZMINE VALDIVIESO,**

**Defendants.**

**<ins>REPORT AND RECOMMENDATION</ins>**

**I.  INTRODUCTION**

On October 13, 2020, the *pro se* Plaintiff, who was previously a federal prisoner

incarcerated in the Northern District of West Virginia, initiated this case by filing an

action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  ECF No. 1.  On March 1, 2022, Plaintiff filed an amended complaint.  ECF No. 52.  Defendants filed a motion to dismiss for failure to state a claim on November 7, 2022, with an accompanying memorandum of law and exhibits in support thereof.  ECF Nos. 99, 100, 100-1 through 100-6.  Plaintiff's response was filed on January 5, 2023. ECF Nos. 107, 107-1 through 107-58.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the petition be denied and dismissed with prejudice as to Warden Hudgins, and without prejudice as all other Defendants.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Plaintiff's Complaint

Plaintiff's initial complaint filed on October 13, 2020, named twenty-five Defendants: (1) Jennifer Saad ("Saad"); (2) Richard Hudgins ("Hudgins"); (3) Eddie Anderson ("Anderson"); (4) Alicia Wilson ("Wilson"); (5) R. Thompson ("Thompson"); (6) Jessica Houchin ("Houchin"); (7) Jon Bremar ("Bremar"); (8) Ricardo Plaud ("Plaud"); (9) Dr. Kirby ("Kirby"); (10) Joshua Hall ("Hall"); (11) Mr. McAdams ("McAdams"); (12) Rebecca Grove ("Grove"); (13) HSA Moore ("Moore"); (14) Michael Weaver ("Weaver"); (15) H. Williams ("Williams"); (16) Angela Dunbar ("Dunbar"); (17) D. J. Harmon[1] ("Harmon"); (18) R. Clem ("Clem"); (19) Officer Tanner ("Tanner"); (20) Officer Hudnall ("Hudnall"); (21) Ian Connors ("Connors"); (22) John Doe; (23) John/Jane Does; (24) E. Dodril[2] ("Dodrill"); and (25)

---

[1] Defendant Harmon was dismissed with prejudice by order entered June 4, 2021.  ECF No. 16.

[2] The Court notes that the pleadings contain two separate spellings for Defendant Dodrill's name, and has elected to use the spelling used by Defendants, "Dodrill".  See ECF No. 100 at 2.

Jazmine Valdivieso ("Valdivieso").  ECF No. 1 at 1 – 2.

On March 1, 2022, Plaintiff filed a motion to file out of time and an amended complaint.  ECF Nos. 51, 52.  In his motion to file out of time, Plaintiff states that he sought "an extension of time to file his amended complaint (Bivens) to reflect the correct Defendants."  ECF No. 51 at 1.  Plaintiff's amended complaint names thirteen defendants, all of whom were named in the initial complaint: (1) Saad; (2) Hudgins; (3) Thompson; (4) McAdams; (5) Williams; (6) Dunbar; (7) Clem; (8) Tanner; (9) Hudnall; (10) Connors; (11) John Doe; (12) John/Jane Does; and (13) Dodrill.  ECF No. 52 at 1 – 2.  The other twelve defendants named in the initial complaint—Anderson, Wilson, Houchin, Bremar, Plaud, Kirby, Hall, Grove, Moore, Weaver, Harmon, and Valdivieso—were not named[3] in the amended complaint.

Plaintiff's amended complaint essentially alleges three claims[4] for relief under the Eighth Amendment: (1) that Defendants were deliberately indifferent to Plaintiff's serious medical needs [ECF No. 52 at 11 – 18]; (2) that Defendants' actions constituted the infliction of cruel and unusual punishment [Id. at 18 – 20]; and (3) the Defendants conspired to interfere with Plaintiff's right of access to medical care [Id. at 18, 20 – 21].

---

[3]  Although the names of some of these Defendants from the initial complaint are mentioned in the amended complaint, those parties were not named or identified as Defendants in the amended complaint. ECF No. 52 at 1 – 5.

[4]  The Court notes that Plaintiff previously filed a separate Bivens action, 3:20-CV-181, in this district, which among other claims, asserted that Defendant Rick Wilson, who is not named in either the initial or amended complaints herein, was deliberately indifferent to Plaintiff's serious medical condition, of stomach or abdominal pain.  A Report and Recommendation filed on June 9, 2021, found that Plaintiff complained of abdominal pain on October 28, 2016, prior to being transferred to FCI Gilmer, and that accordingly, Plaintiff failed to prove he suffered any physical injury or abdominal pain which arose from the allegedly unconstitutional treatment or condition allegedly committed by Defendant Rick Wilson while Plaintiff was at Gilmer.  N.D.W.Va. 3:20-CV-181, ECF No. 81.  The Report and Recommendation was adopted by the District Court by order entered August 13, 2021.  N.D.W.Va. 3:20-CV-181, ECF No. 86.

In the pages attached to the amended complaint, Plaintiff asserts that all Defendants[5]—McAdams, Saad, Hudgins, Dunbar, Connors, Thompson, Tanner, Hudnall, Doe, Williams, Clem, and Dodrill—were deliberately indifferent to his serious medical conditions, including: (1) in 2018, pain in his stomach, abdomen, and kidneys, which were later diagnosed in 2021 as pyloric ulcers; (2) necessary blood tests and medical diet from 2018 through 2020, as recommended by a gastroenterologist; (3) ongoing kidney pain starting in June 2019, through January 2020, and left kidney pain due to a cyst; (4) cyanosis[6] in his hands and feet; and (5) chest pains which predated his April 17, 2020, heart attack (myocardial infarction).  ECF No. 52 at 13 – 18, 21.

Plaintiff further asserts that some defendants were deliberately indifferent to his serious medical needs when: (1) Defendant McAdams "falsified" the subject code of Plaintiff's grievance [Id. at 13]; (2) Defendant Saad failed to investigate why other named medical professional defendants "refused to check the Plaintiff's blood pressure" [Id.]; (3) Defendants Saad, Hudgins, Connor, Thompson, Dunbar, Tanner, Hudnall, and John Doe failed to request that medical professional defendants order medical tests, a medical diet, or follow up on Plaintiff's medical complaints [Id. at 13 – 16]; (4) Defendants Saad, Thompson, Hudgins, John Doe, and Dunbar failed to ensure that the administrative remedy program operated properly, and promptly, and failed to ensure that grievance information was properly entered into the computer system [Id. at 15]; (5) Defendants

[5] Plaintiff's complaint lists "John/Jane Does" without further identification, but lists the title for such defendants "as they become available".  ECF No. 52 at 2.  Further, the amended complaint contains no allegations against "John/Jane Does".

[6] Cyanosis is when a patient's skin, lips or nails turn blue due to a lack of blood oxygen.
https://my.clevelandclinic.org/health/diseases/24297-cyanosis

Williams and Connor split Plaintiff's grievance Remedy ID Number 992661 into two separate grievances, Remedy ID Numbers 992661 and 1002171 [Id. at 16]; and (6) Defendant Clem refused to authorize the purchase of stamps for Plaintiff to mail his grievance [Id. at 16 – 17].

Among other requests for relief, Plaintiff asks that the Court: (1) declare that his Constitutional rights were violated; (2) award actual damages in an amount to be determined at trial; (3) award nominal and punitive damages in an amount to be determined at trial; (4) award Plaintiff attorneys' fees[7] and costs; (5) order Defendants to provide Plaintiff immediate medical treatment.  ECF No. 52 at 22.

### B.    Defendants' Motion to Dismiss for Failure to State a Claim

Defendants' motion to dismiss for failure to state a claim and memorandum in support thereof argue that Plaintiff's suit should be dismissed because: (1) the Court is without jurisdiction over Connors, Dunbar, and Williams because those defendants lack minimum contacts with West Virginia [ECF No. 100 at 9 – 11]; (2) Public Health Service employees Grove, Moore, and Hall are entitled to absolute immunity [Id. at 11]; (3) Plaintiff's claims constitute a new Bivens claim, which is barred from recovery [Id. at 11 – 18]; (4) alternative remedies—administrative remedies, an FTCA action, and internal government employee disciplinary proceedings—are available to Plaintiff but were not pursued [Id. at 18 – 22]; (5) Defendants are entitled to qualified immunity [Id. at 23 – 24]; and (6) Defendants Saad, Thompson, Bremar, Plaud, Kirby, Hall, McAdams, Grove, Moore, Weaver, Harmon, Tanner, Hudnall, Connors, and John Doe should be dismissed for failure to serve or prosecute [Id. at 24 – 25].  Defendants further argue that Plaintiff

---

[7] Although he seeks attorneys' fees, Plaintiff does not have an attorney, but appears *pro se* in this matter.

received adequate and regular medical care, including thirty-one appointments with the Health Services or outside providers, on: (1) January 27, 2017; (2) August 11, 2017; (3) January 26, 2018; (4) February 2, 2018; (5) March 2, 2018; (6) March 5, 2018; (7) March 26, 2018; (8) April 24, 2018; (9) June 5, 2018; (10) June 19, 2018; (11) August 15, 2018; (12) November 13, 2018; (13) December 21, 2018; (14) March 19, 2019; (15) April 23, 2019; (16) June 24, 2019; (17) July 16, 2019; (18) July 29, 2019; (19) August 8, 2019; (20) September 17, 2019; (21) October 21, 2019; (22) November 26, 2019; (23) December 2, 2019; (24) December 20, 2019; (25) January 2, 2020; (26) April 9, 2020; (27) April 17, 2020; (28) April 21, 2020; (29) July 24, 2020; (30) July 31, 2020; and (31) October 15, 2020.  ECF No. 100 at 3 – 7.

### C.      Plaintiff's Response to the Motion to Dismiss

Plaintiff filed his response in opposition to Defendants' motion to dismiss on January 5, 2023.  ECF No. 107.  Therein, Plaintiff for the first time alleges that he now suffers from atrial fibrillation as a result of his lack of medical treatment at FCI Gilmer, and further that Defendants did not make him aware of this health condition until five months after diagnosis.  Id. at 3.  Plaintiff further disputes the health care summaries articulated by Defendants and whether the treatment he received on the following forty-one dates was adequate: (1) January 27, 2017; (2) August 11, 2017; (3) October 13, 2017; (4) January 26, 2018; (5) February 2, 2018; (6) February 20, 2018; (7) March 1, 2018; (8) March 2, 2018; (9) March 5, 2018; (10) March 26, 2018; (11) April 24, 2018; (12) June 5, 2018; (13) June 19, 2018; (14) September 18, 2018; (15) September 18, 2018; (16) August 15, 2018; (17) November 13, 2018; (18) December 21, 2018; (19) March 19, 2019; (20) April 22, 2019; (21) April 23, 2019; (22) June 24, 2019; (23) July 16, 2019; (24) July 17, 2019; (25)

July 29, 2019; (26) August 8, 2019; (27) September 17, 2019; (28) September 23, 2019; (29) October 21, 2019; (30) November 26, 2019; (31) December 2, 2019; (32) December 20, 2019; (33) January 2, 2020; (34) January 10, 2020; (35) January 29, 2020; (36) April 9, 2020; (37) April 17, 2020; (38) April 21, 2020; (39) July 24, 2020; (40) July 31, 2020; and (41) October 15, 2020.  ECF No. 107 at 4 – 14.

Plaintiff asserts that his complaint sufficiently alleges personal jurisdiction over Defendants Connors and Williams, because a court "may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that such conduct would cause harm to a forum resident."  ECF No. 107 at 16 – 17; Jarmuth v. Waters, No. 1:04CV63, 2005 WL 5715172, at *3 (N.D.W. Va. Mar. 31, 2005), aff'd, 220 F. App'x 228 (4th Cir. 2007) (citing Calder v. Jones, 465 U.S. 783, 789 – 90 (1984)). Plaintiff contends that Williams and Connors "directed their tortious intentions and actions" at him when they: (1) split his grievance, Remedy ID Number 992661-R1, into two separate grievances, Remedy ID Numbers 992661-R1 and 2002171-R1; and (2) split the four-part grievance forms, Remedy ID Numbers 992661-A1 and 1002171-A1, into two parts.  ECF No. 107 at 18.  Plaintiff further claims that the actions of Williams and Connors caused him to be denied medical care which "could have possibly prevented the Plaintiff's heart attack."  Id. at 19.

Plaintiff cites to the test articulated in Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397–98 (4th Cir. 2003) (that the Supreme Court held in Calder that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his

tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident), however, Plaintiff does not apply the facts of his case to the test.  ECF No. 107 at 16. !

Plaintiff concedes that Dunbar did not commit any tortious acts and requests that Dunbar be dismissed from this action.  ECF No. 107 at 19.  Further, Plaintiff concedes that Public Health Services Employees are entitled to absolute immunity, and that Grove, Moore and Hall should be dismissed from this action based on their immunity.  Id. at 20.

Plaintiff asserts that his Bivens claims are not barred and argues that Defendants Houchin, Wilson, Anderson, Weaver, Kirby, and Plaud, none of whom were named in the amended complaint, subjected him to cruel and unusual punishment.  ECF No. 107 at 21. Plaintiff further claims that Defendant Saad also subjected him to cruel and unusual punishment because Saad, as the warden, could have authorized a referral for additional medical care in 2018.  Id.  Additionally, Plaintiff claims that Bremar, who was not named in the amended complaint, and Thompson, Williams, and Connors, who were named in the amended complaint, "were all in a position to make a referral" to a specialist for Plaintiff's ongoing kidney pain.  Id. at 23 – 24.

Plaintiff contends that he exhausted his administrative remedies for all grievances, except Remedy ID Numbers 992661-R1 and 992661-A1, which he claims "were intentionally interfered with by Williams and Connors.  Id. at 25.

Further, Plaintiff asserts that Defendants are not entitled to qualified immunity because "[i]t has been clearly established that inmates have a right to adequate medical care."  Id.

Finally, Plaintiff argues that Defendants Saad, Thompson, Bremar, Plaud, Kirby,

Hall, McAdams, Grove, Moore, Weaver, Harmon, Tanner, Hudnall, Connors, and John Doe should not be dismissed for failure to prosecute, because he "cannot be held accountable for improper service because he must rely on the Marshal Service" to effectuate service.  Id. at 26.

Attached to Plaintiff's opposition are exhibits, including: (1) multiple requests for administrative remedies [ECF Nos. 107-1 through 107-31]; (2) declaration of Plaintiff [ECF No. 107-32]; (3) supporting exhibits for Plaintiff's declaration [ECF Nos. 107-33 through 107-55] which include: (a) Plaintiff's medical sick call sheets; (b) medical instructions; (c) inmate request to staff; (d) a handwritten diet chart; (e) emails between Plaintiff and Health Services; (f) Plaintiff's medical records; (g) a letter dated November 15, 2022 from the acting warden to Plaintiff; (h) a position description for Medical Officer (General Practice) (Clinical Director) with a BOP correctional facility; and (4) a declaration by Ambroco Jennings, a fellow inmate [ECF No. 107-56].

### III.   LEGAL STANDARD

#### A.   Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[8] is designed largely to discourage the

---

[8] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."  As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

**B.    Civil Rights Actions Under <u>Bivens</u>.**

In <u>Bivens</u>, <u>supra</u>, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents.  In <u>FDIC v. Meyer</u>, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a <u>Bivens</u> claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts."   <u>Id.</u>   <u>See</u> <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 71 (2001).

Pursuant to <u>Bivens</u>, an individual federal agent may be found liable for actions "in excess of the authority delegated to him."  403 U.S. at 397.  "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."   <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001).   The Supreme Court further explained in <u>Malesko</u>:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72.  Further, in a <u>Bivens</u> case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights.  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994); <u>See</u> <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[9] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

### C.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 - 1 (1972) (per curiam); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the

---

[9]  The Court notes that <u>Bivens</u> actions and § 1983 actions are both civil rights actions, and that <u>Bivens</u> actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face."  Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light

most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

## IV.     ANALYSIS

### A.     Defendants Not Named in the Amended Complaint

As noted in Section II.A. above, Plaintiff's amended complaint names thirteen defendants, all of whom were named in the initial complaint.  However, twelve defendants who were named in the initial complaint—Anderson, Wilson, Houchin, Bremar, Plaud, Kirby, Hall, Grove, Moore, Weaver, Harmon, and Valdivieso—were not named in the amended complaint.  ECF No. 52 at 1 – 2.

Federal Rule of Civil Procedure 21 provides that, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Plaintiff sought leave from the Court to file an amended complaint which omitted twelve defendants who were included in the initial complaint.  The amended complaint mentions some of those parties, but does not assert claims against them.  It appears that Plaintiff's amended complaint intentionally omitted those parties, as recognized by his motion to file out of time, where Plaintiff stated that he wanted his amended complaint "to reflect the correct defendants".  ECF No. 51 at 1.  Further, the first five pages of the amended complaint list all of the Defendants against whom Plaintiff asserted claims.  ECF No. 52 at 1 – 5.  Accordingly, it is recommended that pursuant to Federal Rule of Civil Procedure 21, Defendants Anderson, Wilson, Houchin, Bremar, Plaud, Kirby, Hall[10], Grove, Moore,

---

[10]  Although (1) Plaintiff concedes that Defendants Grove, Moore, and Hall should be dismissed from suit, based on immunity, and (2) Kirby, Plaud, Hall, Grove, Moore, Weaver, and Bremar were not named in the amended complaint, the Court also addresses Defendants' argument that these Defendants should be dismissed based on Plaintiff's failure to perfect serve of process.  ECF No. 107 at 20.

Weaver, Harmon, and Valdivieso be dismissed without prejudice, because they were not named in the amended complaint.

### B.   Defendants Whom Plaintiff Concedes Should be Dismissed

In his response to Defendants' motion to dismiss, Plaintiff concedes that the following individuals should be dismissed from this action: Grove, Moore, Hall, and Dunbar.  ECF No. 107.  Plaintiff agrees with Defendants that Grove, Moore, and Hall are absolutely immune from suit based on their status as Health Services Employees.  Id. at 20.  Further, Plaintiff concedes that Dunbar did not engage in any tortious acts toward him and that Dunbar should be dismissed from this action.  Id. at 19.

### C.   Plaintiff's Failure to Identify Defendants

Plaintiff has failed to provide the names of parties, as required by Federal Rule of Civil Procedure Rule 10(a), which requires that the "title of a complaint must name all the parties."  Plaintiff is required to provide, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55 (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiff's amended complaint identifies "John Doe" [ECF No. 52 at 2], and "John/Jane Does" [Id.] as Defendants, however, the amended complaint fails to name an individual defendant associated with the aliases "John Doe" or "John/Jane Does" whom Plaintiff claims violated his civil rights.

Accordingly, because Plaintiff has failed to name all the parties, and to make a short and plain statement of the claim showing that he is entitled to relief from "John Doe" and "John/Jane Does", as required by Federal Rule of Civil Procedure 10(a), this matter

should be dismissed without prejudice as to "John Doe" and "John/Jane Does".

### D.    Plaintiff's Failure to Serve Defendants

As to Defendants Kirby, Plaud, Connors, Hall, Thompson, Saad, Grove, McAdams, Tanner, Weaver, Moore, Bremar, and Hudnall[11], Defendants correctly argue that Plaintiff has failed to serve process upon those Defendants, as required by Federal Rule of Civil Procedure 4.  Defendants argue that those Defendants should be dismissed for failure to prosecute or serve them.  ECF No. 100 at 24 – 25.

To effectuate service under Federal Rule of Civil Procedure 4(e), Plaintiff could have served those Defendants by:

> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> **(2)** doing any of the following:
> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

However, the return of service for each of those Defendants notes that each summons was returned unexecuted.  ECF Nos. 73 – 83, 93, 94.  The summonses for Kirby, Plaud, Connors, Hall, Thompson, Saad, Grove, McAdams, Tanner, Weaver, and Moore state, "unable to effect service due to lack of appropriate personal information".  ECF Nos. 73 – 83.  The summonses for Bremar and Hudnall state, "only have the notice

---

[11]    The undersigned recognizes that in Section IV.A. above, it was recommended that Bremar, Plaud, Kirby, Hall, Grove, Moore, and Weaver, be dismissed without prejudice on other grounds.  However, Section IV.D. provides additional grounds to dismiss these same defendants.

from USPS that the certified mail was delivered 7/22/22 – with no response (USM299) acknowledging receipt of summons & complaint from the defendant". ECF Nos. 93, 94.

Accordingly, even if those individuals were considered as named Defendants in the amended complaint, because Plaintiff failed to serve process upon Defendants Kirby, Plaud, Connors, Hall, Thompson, Saad, Grove, McAdams, Tanner, Weaver, Moore, Bremar, and Hudnall as required by the Rules of Civil Procedure, the undersigned recommends that Defendants' motion to dismiss those individuals for such failure to effectuate service, be granted without prejudice.

**E.    Lack of Personal Jurisdiction Over Defendants Williams, Dunbar, and Connors**

The complaint names as Defendants Williams and Dunbar[12], both of whom are employees of the Bureau of Prisons Mid-Atlantic Regional Office, in Annapolis Junction, Maryland, and Connors[13], who is an employee at the BOP Central Office in Washington, DC. Defendants argue that West Virginia is an improper venue to pursue those Defendants whose actions occurred outside of West Virginia. ECF No. 100 at 9 – 11.

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." <u>Christian</u>

---

[12]  Although as discussed in Section IV.B. above, Plaintiff concedes that Dunbar should be dismissed from this action, absent Plaintiff's concession, Dunbar's immunity from suit is addressed in Section IV.E.

[13]  The Court notes that process was not served upon Connors, and that he should be dismissed from this action without prejudice based on that failure to serve process, as discussed in Section IV.C. above. However, should Connors be served, he would still properly be dismissed without prejudice based on the analysis in Section IV.E.

Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th

Cir. 2001).  The West Virginia long-arm statute is contained in W.Va. Code § 56-3-33.[14]

The Fourth Circuit has stated that:

> Because the West Virginia long-arm statute is coextensive
> with the full reach of due process, it is unnecessary . . . to go
> through the normal two-step formula for determining the
> existence of personal jurisdiction.  Rather the statutory inquiry
> necessarily merges with the Constitutional inquiry.
> Accordingly, our inquiry centers on whether exercising
> personal jurisdiction over [a defendant] is consistent with the
> Due Process Clause.

In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997) (internal citations omitted).  To

satisfy constitutional due process, the defendant must have sufficient minimum contacts

---

[14]  This section provides in part as follows:

(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the Secretary of State, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising out of or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

with West Virginia so that requiring it to defend its interest here would not, "[o]ffend traditional notions of fair play and substantial justice." Id. at 628, quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). To establish those minimum contacts necessary to confer jurisdiction, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing International Shoe). The Fourth Circuit has recognized that such minimum contacts must be "purposeful." In re Celotex, 124 F.3d at 628, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). "Jurisdiction is proper [ ] where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." Burger King Corp., 471 U.S. at 475.

"[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Walden v. Fiore, 571 U.S. 277, 285 (2014). In Walden, the Supreme Court found that a Georgia police officer lacked the minimum contacts with Nevada which were required for Nevada to exercise personal jurisdiction over the officer who was accused of drafting a false probable cause affidavit to support the forfeiture of funds seized during a search at a Georgia airport. Id. at 277.

Plaintiff has failed to assert any specific contact by Defendants from Maryland or the District of Columbia with the State of West Virginia, other than preparing documents which may have been read by the Plaintiff or federal officials in West Virginia. It is clear that the Maryland and District of Columbia Defendants are non-residents of West Virginia who have not personally engaged, or by authorized agents engaged, in any one or more

of the acts specified in subdivisions (1) through (7) of subparagraph (a) of the West Virginia long-arm statute, W.Va. Code § 56-3-33.  Accordingly, based on the information contained in the complaint, the Court cannot exercise personal jurisdiction over those Defendants, Williams, Dunbar, and Connors, because none of those Defendants engaged in the specified acts under the long-arm statute, and the actions of those individuals, which Plaintiff alleges in support of his claims, took place outside of West Virginia.

For all of these reasons, the court lacks jurisdiction to consider any civil rights cause of action against any Defendant whose actions took place in either Maryland or the District of Columbia.  Therefore, the complaint against Williams, Dunbar, and Connors should be dismissed without prejudice for lack of personal jurisdiction as to those Defendants.

## F.      Improper Defendant Based on the Absence of Supervisory Liability in Bivens Actions

Plaintiff named Warden Hudgins as a Defendant in this Bivens action.  However, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights.  Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").  Moreover, "[i]n a Bivens suit, there is no respondeat superior liability.  Instead, liability is personal, based upon each defendant's own constitutional violations."  Trulock v. Freeh, 275 F.3d 391, 402 (2001) (internal citation omitted).  In Trulock, although plaintiffs sued, among other defendants, the former director of the FBI

and two FBI supervisors, the Court found that were there was "no allegation that any of these [ ] individuals were personally complicit. . . [and] [a]ccordingly, th[o]se defendants [ ] enjoy immunity."  Id.  "A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw v. Stroud, 13 F.3d791, 799 (4th Cir. 1994).  "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

The only allegations made by Plaintiff against Warden Hudgins are that he failed to: (1) direct medical professionals to perform tests, provide specific treatment, and administer a medical diet [ECF No. 52 at 13 – 15, 16 – 17]; and (2) ensure the administrative remedy program operated properly, including data entry into the system for Plaintiff's grievances [Id. at 15].  Under the clear holding of Trulock, there is no doctrine of *respondeat superior* in Bivens actions, and thus, supervisory defendants may not be held liable for the actions of their subordinates.  As to Plaintiff's claims of Hudgins' inaction concerning his medical condition, Plaintiff alleges that Warden Hudgins failed to overrule decisions made by medical personnel regarding Plaintiff's medical treatment.

However, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed.  See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment

ordered by such personnel).  Thus, even assuming Hudgins, a supervisory Defendant, had notice of Plaintiff's concern regarding his medical treatment or lack thereof, that notice does not rise to the level of personal involvement for liability in this suit.  Further, to the extent that Hudgins properly relied on any professional judgment of trained medical personnel regarding Plaintiff's medical needs, that reliance was proper based on the holding of Miltier, and Hudgins may not be held liable under Bivens for that reliance.

To the extent that Plaintiff alleges that Hudgins failed to supervise medical personnel regarding medical treatment including dietary needs, or that he failed to supervise personnel in charge of the grievance procedure, including accurate record reporting for Plaintiff's grievances, there is no evidence to support those claims. The Fourth Circuit has recognized that "[i]n order to succeed on a supervisory liability claim under Bivens, a plaintiff may not rely on respondeat superior, but must show 'that the supervisor had actual or constructive knowledge that her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff,' and that the supervisor's response showed 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and caused the plaintiff's injury." Baker v. United States, 645 F. App'x 266, 269 (4th Cir. 2016) (quoting Wilkins v. Montgomery, 751 F.3d 214, 226 – 27 (4th Cir. 2014).  Although Plaintiff has alleged that Hudgins had actual or constructive knowledge of Plaintiff's medical conditions and of his subordinates' alleged conduct, Plaintiff fails to assert how Hudgins obtained such knowledge.  Such broad conclusory allegations are unsubstantiated claims.

Further, even if Plaintiff's claims were supported by evidence, he still fails to show that Hudgins' acts were taken to support or advance an official policy.  However, "[o]nly if the evidence showed that conduct directly causing the deprivation [of civil rights] was done to effectuate an official policy or custom for which [the warden] was responsible could he be liable," for the conduct of his subordinates.  Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1143 (4th Cir. 1982), abrogated by Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991).

Finally, other than Plaintiff's broad assertions, there is no evidence to support Plaintiff's claims that Hudgins failed to ensure that Plaintiff was given a medical diet or that the BOP's administrative remedy program "was not operated in an arbitrary and capricious manner and that the SENTRY entries were accurately maintained by the Administrative Remedy Coordinator at the institutional level" for his Remedy ID Numbers 936342, 986154, and 992661.  ECF No. 52 at 15.  Based on the lack of respondeat superior liability, Hudgins cannot be held responsible for the actions of his subordinates, and accordingly those claims lack merit and fail.

For all of these reasons, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Hudgins, who should be dismissed from this action with prejudice.

**G.    Failure to State a Claim Against Defendants Clem and Dodrill**

A review of the amended complaint conducted pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff does not make a plausible claim based on any cognizable legal authority and fails to present a claim upon which relief can be granted as to Clem and Dodrill.

Plaintiff asserts that Clem was deliberately indifferent to his serious medical needs when he: (1) refused to authorize Plaintiff's purchase of stamps to mail his grievance, which Plaintiff contends delayed his access to medical care [ECF No. 52 at 16 – 17]; (2) refused to look at Plaintiff's hands which were allegedly blue in color from lack of blood oxygen [Id. at 17, 19, 20]; and (3) conspired with Bureau of Prisons employees Williams and Connors to delay the consideration of Plaintiff's administrative remedies [Id. at 20]. Plaintiff asserts that Dodrill was deliberately indifferent to his serious medical needs when he refused to look at Plaintiff's hands had turned blue.  Id. at 17, 19, 20.

In a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

Plaintiff has failed to comply with the Federal Rules of Civil Procedure requirement that only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555.  Plaintiff's complaint fails to allege that either Clem or Dodrill took specific action which constitute the civil rights violations alleged by Plaintiff, or that Plaintiff suffered any physical injury as a result.  Rather, Plaintiff contends, without supporting documentation, that the actions of Clem and Dodrill delayed medical care, for a condition which Plaintiff acknowledges was already present.  Additionally, Plaintiff concedes that Clem "IS NOT a medical

professional." ECF No. 52 at 21, emphasis in original. Further, Plaintiff identified Dodrill as "Unit Manager (A-Unit), who had a "duty of care" for Plaintiff's safekeeping, not as a medical professional. ECF No. 52 at 2, 8. Moreover, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), quoting Bell Atl. Corp. v. Twombly (emphasis added).

As noted above, because "only those questions which are squarely presented to a court may properly be addressed," this Court may not construct Plaintiff's arguments for him. Weller, 901 F.2d at 391. Even when liberally construing Plaintiff's allegations, he fails to assert any claims that the named Defendants subjected, or caused him to be subjected, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

By failing to allege with specificity how Defendants Clem and Dodrill violated any of Plaintiff's federal rights, Plaintiff seeks relief which is unavailable or improper under Bivens, because he has failed to assert a cognizable cause of action as to any claim against those Defendants. Accordingly, because Plaintiff has failed to state a claim upon which relief can be granted pursuant to Bivens, this Court recommends that this matter be dismissed with prejudice.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint [ECF No. 52] be **DISMISSED WITH PREJUDICE** as to **HUDGINS**, and **WITHOUT PREJUDICE** as to **ALL OTHER DEFENDANTS**.

It is further **RECOMMENDED** that Defendants' motion to dismiss [ECF No. 99] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:     January 13, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE